All right, we'll begin argument in number 23, 1676, Cruz v. Garland. Mr. Winograd, please proceed. Thank you, your honors, and may it please the court. The specific question at issue in this case is whether the child abuse grant of deportability applies to attempt or strict liability crimes. But the larger question is whether the board can ignore the plain text of the statute or its own precedent to reach what it considers to be a preferable policy outcome. The court should hold that it cannot. Applying the tools of construction leaves no doubt that the grant of deportability does not apply to attempt offenses, and the board's own precedent makes it equally clear that it does not apply to strict liability crimes. For either reason, the court should reverse the board's decision and order my client released from custody as quickly as possible. Unless the court prefers otherwise, I'll address the arguments in the same order in which they appear in the briefs. The Supreme Court has said time and again that courts must exhaust the tools of construction before declaring a statute ambiguous, and applying those tools shows that the statute at issue does not apply to inchoate If you do that, can you tell us what you believe the elements of the generic offense here are? Your brief and your argument is in the negative, right? It's not this, it's not that, it's not the other thing. But our job, obviously, is to determine what are the elements of the generic offense and does this match it. Can you tell us, based on your interpretation and read, what you believe the elements to be of the generic offense? I cannot, Your Honor, because that question is not before the court in this case. The question before the court is, regardless of what a crime of child abuse is, did Congress make an attempt to commit such a crime a ground of deportability? Well, those are two different questions. One way of answering that is to say, I refuse to answer your question, Judge, because I don't like it. That's fine, you can take that position. I'm not sure it's the right way to go, but you're entitled to take it. We'll see how that goes. The other answer is to say, I have no idea, or give me an answer, right? But your answer is not a helpful one. So do you refuse to answer the question? Do you not know the answer to the question, so you just plead ignorance? Or do you want to provide an answer to the question? It's option B. I'm certainly not refusing to answer the question. So your position, the petitioner's position is that you have no idea what the statute means. It's not that I have no idea. It's that I have not thought about that particular question, because it's not an active dispute between the parties in this case. The dispute between the parties is whether this ground of deportability applies to attempt or other insolent offenses. So can I take that to mean that you accept the government's view of what the elements of the generic offense are? No. No, your honor. You just don't take a position on it. So you just say, I don't care what it is. We can pick anything we want. I don't even understand the argument. My point is that it's neither here nor there, because that is not the basis on which the board decided the case. That's the first option. That is, you refuse to answer the question, because you think that I don't have a good idea of what the case is about. That's an option, and I understand that that might be the position you want to take. But last time, you just don't answer that question. You do not express a view and refuse to express a view as to what the elements of the generic offense are, which is the first step in the inquiry that we're required to engage in. I don't believe the first step. The first step under Chevron is to see if Congress has expressed an intent, if Congress has spoken to the precise question at issue. That is what the Supreme Court said in Chevron, the precise question at issue. But counsel, assume we don't go with you on that argument. I mean, you may win on that, but you may not. And if you don't prevail on that argument, even under Chevron analysis or even under a statutory interpretation analysis we do, then we go and do the categorical analysis. So it seems like you're putting all your chips in that first basket, because you can't give us something that we do the rest of the analysis with. Not at all, Your Honor. We think we win either way. We think both that the statute does not cover attempt offenses, but even assuming that we go with the Board's generic definition and the Board's analysis in this case, we think the Board's analysis was independently mistaken. And I'm happy to turn to that. Even assuming that the Board's generic definition of child abuse is correct, I still think it doesn't apply. Just to be clear, your position is that we have to determine whether the generic offense includes attempt or this particular offense is. You won't tell us the elements of the generic offense that we then compare against the crime of conviction. I mean, you're saying at the first step of the categorical approach, putting aside Chevron, the question is what is the generic crime and does this match, right? That's the process we go through. And what I'm trying to get you to answer, and I will not ask it again, I promise, if you refuse to answer at this time, that's fine. What you will not answer is what the generic crime is that we are required by law, by the precedent, to compare against what the crime of conviction is. My answer is whatever the generic definition of crime of child abuse is, it does not include in code offenses. But you will not answer what it is. You just want to say what it's not. So you're saying the comparison, we only have to look at one piece of the comparison. That's a really hard comparison to make, right? Is an apple and then you compare to what, right? There's no comparison that you're giving us to make. I would point your honor to the Supreme Court decision in Esquivel-Quintana versus Sessions. In that case, that case involves sexual abuse of a minor. The Supreme Court specifically said we are not adopting a global definition of sexual abuse of a minor. They said all a petitioner has to do is show that there is special about the statute in question. We have to, the phrase child abuse has to have some meaning. We can't just say that it was an empty gesture on the part of Congress. It has to have some meaning. And I think we start with the idea that Congress wanted instances of child abuse to be, people who infringed on that, to be deportable. And so we have to figure out what to the question to take the child endangerment statutes and say that child abuse can be defined by looking at the element of risk and harm to the child from the That's what the BIA has tried to do in this case was to say borrow from the child endangerment statutes and say an attempt here can put a child at significant risk. And then you take that it aims at the same point of a likelihood of harm to the child. And why isn't that a reasonable way to go about deciding that Congress meant something by the use of these words and that a likelihood of harm to the child is a perfectly reasonable way of discerning Congress's intention? Sure. I think there are two problems with the board's analogy to child endangerment in this case. First, child endangerment is a complete crime unto itself. And by definition, child endangerment necessarily requires a child to actually be placed in harm's way. By contrast, a person can attempt to commit child abuse without actually placing a child in harm's way. So for example, consider a Congress has never been very systematic or consistent in its approach to inchoate offenses. And so we have to approach it in a way that leaves us feeling that we have implemented or we have interpreted what Congress meant to do. And when I look at the elements of the, we're in a categorical approach here, and when I look at the elements of the D.C. crime of which the individual was convicted, it says you have to have an intent to commit the crime. You have to commit an overt act toward the completion of the crime. And the crime must you must be in dangerous proximity of completing the crime in some only some external circumstance prevented the completion of the crime. Now why isn't the D.C. offense a perfectly reasonable way to interpret those, this particular phrase in the statute, this sort of unadorned phrase in the statute? Why isn't it a perfectly way, maybe the fact that Chevron may not require it doesn't prohibit us from finding this persuasive? Well, first of all, the government is not even asking for Chevron deference in this case to the board's ultimate conclusion. It's asking for at most Skidmore deference, and we don't think that the court can grant Skidmore deference to a position that an agency takes in this case. Putting Chevron aside, one of the things that doesn't preclude us from applying Skidmore deference and finding the approach, the child endangerment approach persuasive, because what Congress was concerned about was harm to children. And that's what the BIA standard picks up, and that's what the District of Columbia offense picks up. They're all aimed at the same thing, as far as I can see. What Congress said, what the BIA said, what the District of Columbia said, they're all aimed at harm visited upon children. And why is that something that we should say, ah, we don't accept it? As your Honor yourself put it last year, the statutory text often lies in the way of judicially preferred results. Here, in at least eight other provisions of the INA, including the three subsections immediately preceding the grant of deportability in this case, Congress made non-citizens removable if they were specifically convicted of attempting or did not refer to attempt or conspiracy when it enacted the child abuse grant of deportability. On that, on the reference to attempt in other sections, particularly in the INA or this section of the INA, I certainly understand that point. You point to three of them. Do you agree, though, with a canon like that, that it makes sense to look at the nature of the offense that's contained in the section where attempt is used or it's not, such that if the description of the offense or category offenses doesn't require attempt to be spelled out, doesn't that, you know, isn't that part of the analysis as well? We don't just say, okay, they didn't say it, they said it here, they didn't say it there, ipso facto, we're done. Then we have to look a little harder and say, does it make sense to do it, given the nature of offense? And in particular, think of crime involving moral turpitude. I know you point out a difference there, but from a general perspective, doesn't that teach us that you don't just look mechanically at whether it's there, attempt is there or not, you do a hard look at what's covered by the offense? Sure. I don't disagree with that, but even under that premise, I think we win because the board's precedent in the CIMT context is distinguishable. So a crime involving moral turpitude, that's been in the INA since 1952, and courts had long held that attempting to commit a CIMT is itself a CIMT. I don't think anyone would say that attempting to commit child I think maybe an analogy in this case would be helpful, especially considering who is in the audience today. So imagine that the question was not what qualifies as a crime of child abuse, but what qualifies as an act of war. And let's say the interpreting body defined act of war to include both direct military strikes and any action that is likely to provoke a war. So let's say, imagine the pilot of a B-52 affirmably wants to start a war with Russia. He'll go rogue. So he decides to commandeer a B-52, fly towards Russia and either drop a bomb on the Kremlin or provoke Russia into shooting him down. Now in either of those scenarios, if the plane were to succeed, that would of course be an act of war. But if the plane were never, if he was apprehended by his superiors before he could carry out the plan, if the plane never even got off the ground, or if the plane never even reached Russian airspace, and the Russians were none the wiser, no one would say that that is an act of war. They would say it was a failure to commit an act of war. And I think that's what we have in this case. Here, the failure, DC criminalizes. What I think here is, you know, there are attempts and then there are attempts. And some attempts don't really get off the ground. They are just sort of musings or discussions or half-hearted steps or what have you. But what struck me here was that both the BIA's reference to the child endangerment statutes and the District of Columbia offense narrow the gap between any inchoate offense and a substantive offense to the point where it's almost non-existent. Because when you read these, you realize that the harm to the child can be greater from an attempt, as great or greater from attempt as it can be from a completed act. And so these efforts to define attempt, this is not some sort of, I might do it, I might not, I might do it. They're requiring an overt act. They're requiring dangerous proximity to completing the crime. They're requiring a definite intent. And when you look at it, it shrinks the difference between the substantive crime and the inchoate crime to almost nil. Zero. Nothing. I respectfully disagree, Your Honor. The DC Court of Appeals has defined the dangerous step, of course, along with the intent. The attempt liability in DC is the same as it is as we read about in horn books on criminal law. It's simply intent plus a substantial step. So I don't think DC law narrows attempt liability in the way. That's because the only reason the crime wasn't completed is because of some external event that made it impossible to complete. And if that happens, then by definition, there is no actual risk of harm to a child. The board's test again for when the board has said that the statute must require proof of a likelihood or reasonable probability that a child will be harmed, not a mere possibility or potential for harm. That's the Rivera-Mendoza case that they rely on in this case. And here, when a crime is stopped before it can be completed, that's a mere possibility or potential for harm, not a likelihood or reasonable probability of harm. All right. Thank you. Thank you, Your Honor. Mr. Zadie, we'd be happy to hear from you. Good morning, Your Honors. And may it please the Court. Imran Zadie for the Attorney General. The board here correctly decided both of the issues presented in this petition for review by concluding that first, the crime of child abuse ground does extend to attempt offenses so long as they present a sufficient risk of harm to a child. And second, crime of child abuse does not require a culpable mental state as to the victim's age. Now, I'd like to clarify at the outset how these issues arise within the Chevron framework, because it seems that that's one of the important issues here. And the framework was definitely unclear. At least, there seemed to be some serious conflict between the government's brief and the petitioner's briefing here. At step one, there's really no serious dispute that the crime of child abuse does not clearly answer either one of these questions. The global question which we have to sort of step back and answer is, did Congress really intend people who have been convicted, non-citizens, who have been convicted of a crime of child abuse, not to be deportable? And to reach that conclusion, it seems to me, is to, I don't want to overstate it, but it's to make us close to a laughing stock. And you just think that Congress used those words, child abuse. It wanted to protect children. Here, court comes along and says, it doesn't matter if you're convicted here twice of child abuse, could be sexual abuse, or it can be just physical abuse. But Congress had in mind, first, foremost, and always, we're going to do what we can to protect children. That's what they're after. That's right, Your Honor. We don't disagree with that. I'm sorry, was there a question in there? I didn't understand what the question was. Can I ask a follow-on question, I think, to that? When we think about, as I understand the way that you've defined the generic crime here, there has to be an actual child involved, right? That it has to place a child at risk. That's right, Your Honor. And there's discussion below, and I understand that your opponent hasn't argued this, and it's probably forfeited and not an issue, but I'm trying to understand what we're trying to do. Do you agree that that generic definition would not include sort of like an undercover sting operation? It's an important question, Your Honor, and I should say, I believe that's the definition, matter of this court's decision, excuse me, in Jimenez-Cedillo, I believe the court there said, I'm sorry, in the board's decision, in Jimenez-Cedillo, the second time around in 2020, I believe there they alluded to the fact that because the statute did cover undercover offenses, it would not amount to a crime of child abuse. The Florida statute? The Florida statute, that's correct. So I do believe it wasn't extremely explicit, and it was sort of a last line of the opinion, but that the board was saying that the generic definition does require an actual child. And the point there, that offense there, which was not the offense we have here, quite different, it's a solicitation offense. Sure. Because that encompassed the undercover operation example, it didn't cover. And so assume or just accept that as hypothetically true for the next part of this? Okay. Well, why do we think that this statute, the crime of conviction here, does not permit, if we're doing the categorical approach and we're comparing that generic definition to the crime of conviction, why this crime of conviction doesn't, why it's different than the Florida statute, such that it doesn't encompass the sort of undercover sting argument? I know they hadn't made this argument. No, sure. Of course, your honor. I think it's an important question. I think the reason they didn't make the argument is that it's not encompassed in the elements of crime here. And if you look at... Help me understand why that is. Sure, of course. So there's no question, no one's disputed here, and it's quite clear from the law that this statute requires that it be an actual child. Set aside the mens rea. The substantive offense. The substantive offense. And I'm getting to the attempt and how that sort of maps onto that. So the actual substantive offense of second degree child sexual abuse requires an actual child. And so you map onto that what D.C.'s version of attempt looks like. That's intent to commit the test, right? Which is that the intent plus that substantial step or that overt act brings you within, but for some interference of defendants, overt acts would have resulted in the completion of the crime. So mapping that, those three elements of attempt, onto this underlying offense which requires an actual child makes quite clear that it does not extend to undercover officers. And of course, nothing in D.C. law, there's no case involving undercover officers, a sting situation, solicitation type offenses like that. Which again is why we think, you know, petitioner hasn't made the argument here. They could have certainly brought in examples like that under a realistic probability test. And there's just simply no indication that this offense would encompass acts including undercover officers. Thanks. One other question on that. When you talk about the elements of attempt here, the first one you indicate is this intent to commit the crime. And so what I'm trying to ask is whether that requires some knowledge of age. So if I understand the substantive offense requires no knowledge of age. But in your view, does the attempt require some knowledge of age because there has to be an intent to commit the crime? And so there's a sense in which if we look at that question in order for an individual to have intent to commit this, you know, child abuse offense, they have to know that there's a child. Because otherwise, they can't have an intent to commit the crime, right? They're just, you know, I'm beating up Judge Quattlebaum. He's not a child. So it doesn't, I can't have the attempt to beat up an, I don't want to say older gentleman, but a middle-aged gentleman. Equally aged gentleman. Not equally aged. Unfortunately, no. But, right, so to take the step, there seems like there has to be some intent related to the age, even though the substantive offense itself doesn't require intentionality with respect to the age. Do you agree with that? Do you have comments on it? It's a very interesting question, Your Honor. And I know certainly in some immigration analyses, the attempt version of a crime does introduce a type of mens rea that is sort of needed to complete the categorical match. That's not the theory that the Board relied on here, so we don't, no, I should say we don't take a position on that. We don't believe that that's what the Board is doing here, and that's not the decision that we're defending here. Totally understand that. And I would like to explain, though, I think, because it's actually important also for the second issue today, because you're talking about culpability and whether some type of a mens rea then can extend to the other elements. This Court has made clear, I believe, in a case called Hamilton, or U.S. v. Banker, which is mentioned in the matter of Jimenez-Sedillo, that, you know, an element in a criminal statute, anytime there's a mens rea in a criminal statute, it does not extend to all the different elements. So if, as Your Honor suggested, you have an intent which comes in from an intent, an attempt version of an offense, that's not necessarily an extent to all the others, to all the other elements of the offense. And we think that's certainly what's happening with the I'm not trying to turn to that. It's certainly an interesting question, but I think there would be a risk in splitting the elements for an attempt crime and for an inchoate crime and the elements for the substantive act. I'm just not aware of any particular approach that says the substantive act encompasses these elements and the attempt, however, must encompass a different set of elements. I think, so splitting this into two roads that lead in the woods in different directions, we would be having a series of attempt crimes with one set of elements and a series of substantive offenses which required a different set of elements. And it's interesting here because the courts have been so emphatic on saying that the mens rea does not apply to age. We're not going to accept the mens rea offense that said, well, I thought she was 16. And so once you find that element with a substantive offense, it seems that the most straightforward thing is to carry it through. See what I'm saying? Sure. And to be clear again, Your Honor, I don't think, I guess the mens rea and either one of the underlying offense here of child sexual abuse or the attempt, the intent from the attempt element, we don't think either one of those extend quite clearly because as you suggested, especially with these child sex offenses, they make very clear whether there's a sort of mistake of age defense permitted. So even here, obviously, our argument as to the culpable mental state with the victim's age, so set aside the attempt portion of this entirely. The statutes that have required a sort of culpable mental state are very clear about that and that's not the case here. This one, of course, is a strict liability. And then Judge Richardson, to go back to your question, I think one of the reasons that the intent from the attempt portion of this does not extend all the way through, because you suggested that, you know, it has to have some meaning. I think it does have meaning. It's that if you intend to commit this crime, which is the sort of sexual act, with what is in fact a child, you don't need to know that that was a child. It is the intent to commit this sexual act, defined however it is defined, with what turns out to be a child. So I don't think you're sort of negating the mens rea or any aspect of the attempt element to read the statute that way. Counsel, can I go back to maybe the beginning? Anne, I think you briefed and it sounded like you were starting to say, you know, the phrase here, a crime of child abuse, neglect, and other courts have found that to be ambiguous and the government has taken that position. But why isn't the concept that Judge Wilkinson mentioned that it's clear from the text itself that the object of those offenses or those types of crimes is this risk of putting a child at risk so that we can tell that, you know, from the text and not need to defer in this situation? Seems like you go straight to Chevron deference and I wonder, you know, why you don't say the text doesn't even require that. Your Honor, I think, so the ground itself extends to child abuse, child neglect, and child abandonment. What the board has said, and I understand you're asking a step one question. I promise I'll answer it. But what the board has said is that that is a broad phrasing and includes three different types of offenses that themselves are very widely and variously classified by states. So you're looking at sort of three separate types of offenses that themselves are meant to capture a very broad swath of conduct. So that could lend to a yes answer to your question. Doesn't that mean that we are trying to protect kids so it certainly should extend to crimes that present a risk to kids? I think the way the board has resolved this and the way we think of this is, well, Congress hasn't said from just those words and that phrasing, child abuse, child neglect, child abandonment, alone that we can say exactly what it extends to and what not. It's ambiguous for the reason I just mentioned and that's where then you turn to Chevron step two. And then, of course, the board has defined the term to then include endangerment crimes. I think another maybe more direct answer to your question is, of course, the phrasing itself of the statute doesn't include risk or endangerment crimes. The board has defined it to include those. So I don't know, even at step one, even if I wanted to be extra aggressive and even if I could take a position that's not what we did here and what the board has taken, I don't know that I would say at step one you would necessarily be able to say that child endangerment is included here. But I think Judge Quirlebaum's question really hits the nail on the head and said, if you look at the idea that child abuse and what children from unreasonable risk, both the board standards, the child endangerment cases, the District of Columbia offense, are all after the same thing. And you can go Chevron or not. I mean, there's some indication that Chevron's hour and the sun may have passed, but that doesn't leave you with an empty quiver. You still have Skidmore deference and it's still open to us to find what happened here persuasive. And what you're saying, as I understand it, to follow up on what Judge Quirlebaum was mentioning is that Congress wanted to protect children from undue risk and undue harm. And the BIA's interpretation in this very case and the District of Columbia are after the very same thing. In other words, we've got everybody's after the same thing, which is to protect the most vulnerable members of our community from this kind of behavior. And that seems to me a bit of straight, pretty straightforward, what Congress meant to accomplish and also what the board and the District of Columbia tried to make good on Congress's purpose. You know, I don't want to argue against myself, Your Honor, but of course we are defending this at Chevron step two. I don't disagree that when you look at a phrase like crime of child abuse, child neglect, child abatement, and what Congress's intent was here, it certainly should extend and would extend to the type of offense we're looking at here. Because it certainly presented a risk of harm and we think a sufficient risk of harm to a child abuse have to mean something. Certainly, Your Honor. And my question is, why not this? You know, when I was reading the District of Columbia elements and looking at the decision below, I thought, yeah, that's right. That's what Congress meant. That's what Congress wanted to happen. We don't disagree, Your Honor. We just do it at Chevron step two. So, counsel, on that, I raised it and now I'm going to question you about it to see if that were to work. It seems like one response to that might be, and I'm not saying this is a response that prevails, is that with child abuse, child neglect, child abandonment, all those things can occur without a child actually being injured. I think that's pretty clear. That said, it seems like most of the events that would lead to that result are completed events that do or do not result in injury. Whereas this is an event that's not completed that may very well put a child at risk. Your counsel may object that it puts a child at risk. That's one issue. But I think that's the question as to whether an incompleted event really is something that is unambiguous in the text or not. If you focus on the risk, maybe it is. But if you focus on the type of thing that creates the risk, maybe it's not. Do you have a view on that? Your Honor, I definitely want, I think one of the most important takeaways I want to leave this panel is this question of what the difference is or if there's a difference between a completed offense and a sort of risk-based offense like endangerment for the purposes of our specific question. An endangerment offense is itself merely the creation of risk. So that risk can come just as easily from a completed offense of child endangerment as it can from an attempt to do something much more serious like, for instance, second-degree child sexual abuse. The question is simply whether in either one of those different offenses you've created a risk of a likelihood or reasonable probability of harm to a child. So it is immaterial whether an attempt is included in the statute or not. That risk can come just as easily from an attempt offense, again, because endangerment is itself merely the creation of risk. And I think one important hypothetical I want to address from Petitioner's brief that sort of makes a very dangerous comparison that is not what we have here, so I want to address it, is I believe in the reply Petitioner brings up this example of a drunk driver getting in the car with unbuckled children in the backseat. So that's a sort of classic endangerment theory. And he compares that to, well, if that person was stopped from getting in the car in the first place by a police officer, say, well, then that wouldn't even create the risk. It was only theoretical. That's not the comparison we have here. That's endangerment versus attempted endangerment. So that's an attempt that was thwarted to even create a risk in the first place. The comparison we have here is we're comparing to endangerment a crime that has attempted very serious harm. So the actual comparison would be, take that exact same endangerment hypo, drunk driver, kids in the backseat unbuckled, compare it to a driver trying to strike the children with a car but being stopped by a police officer, a driver veering off in the last second and hitting the car. Or maybe more appropriately for our sex crimes with children context, the endangerment version of this crime would be perhaps leaving a child alone in a room with a known sex offender. That's the endangerment version of it. The attempted version of what we have here would be you trying to rape or abuse a child yourself and being stopped by the child resisting your advances or somebody else stopping you. That's the serious nature of the offense we're talking about. This is not attempted endangerment. This is attempt to commit a very serious crime. I would think in the intervention that stopped the drunk driver with someone with an unbuckled child, for example, in the backseat, you would take the same position that that would be covered by this. Are you saying that? I'm saying that would be a much, we might, I think that's a much more difficult sell because that's not even creating the risk in the first place because you haven't started driving. The endangerment is creating the risk by driving with the kids in the backseat unbuckled. I'm having trouble with your line there. I mean, in the attempt of sexual misconduct like this, you haven't started the contact. I mean, and so, Matt, it seems to me if you think this applies here, I'm having trouble how you aren't saying it covers the example you're trying to say is not before us. I guess let me frame this better, Your Honor, by just saying a more appropriate and more apples to apples comparison would be if you were trying to harm the child and not just attempting to endanger. I'm just saying that's one more step removed from the actual harm. It still might be defensible, but that might be a closer call. So again, the example here would be if you yourself are trying to harm the child and the child stops you by, say, resisting your advances or running away. And that, by the way, if you look at the D.C. cases we cited that have actually interpreted, construed the word attempt in the context of child sex offenses, that is what the outside interference was. In both of the cases, the Davis case and the Hillstock case involved a father exposing his penis to an 11-year-old daughter and the crime not being completed just because the daughter herself turned and ran away. And then in the Hillstock case, it was a gentleman getting in bed with a victim and repeatedly making advances, touching them, and the resistance and the outside interference that prevented the crime from being completed was this sort of ongoing resistance to the crime. Your Honor, I see I'm over my time. I'm happy to continue. The broader point, I think, is that I don't think we can assume that attempts are purely harmless or that attempts are something of which the minor or the child would be unaware of whatever. When we talk about the D.C. crime within dangerous proximity of completing the crime only to be thwarted by some sort of externality, to say that the child, to say that these are, first of all, negligible offenses is one thing. To attempt child abuse is not a negligible offense in and of itself, and it's also not an offense of which we can just sort of assume that the child was ignorant or aware or was untouched by it, that the child never learned about it. So you have, I think, both of those things at play, and that is there was an attempt to do something, not an attempt to shoplift or to run a red light, but an attempt to commit child abuse, and that's serious in and of itself, and it's part of Congress's effort here to prevent child abuse. It can be prophylactic, and the statute using attempt furthers the prophylaxis in what I think is inherent in the statute. So an attempt can be an act of prophylaxis, and you have, in addition, the fact that sometimes children are tangibly harmed by attempts. They're not in a vacuum. They learn about it, either in the prosecution or because the D.C. element of the crime talks about dangerous proximity interrupted only by some externality, and so I think it's a very good question, but those are the thoughts I have in response. We don't disagree, Your Honor. As we said in our briefing, we think it's a very serious offense, and we certainly think it meets the sort of endangerment or risk of harm to a child standard. The whole thing is that they're guarding against child abuse, and part of the shield against child abuse is to penalize people who attempt to commit child abuse. We agree, Your Honor. That's part of the whole protective effort. I see that I'm well over my time, Your Honor. Yes, thank you. I'm happy to answer any other questions. Thank you, Your Honor. We ask that the Court deny the petition. Thank you, Your Honors. If I could turn to the strict liability issue and begin by addressing Judge Richardson's question about whether someone who's convicted of attempt has to know that the victim is a child. There's a D.C. statute specifically addressing this. It's D.C. 22-3011. We cite it in our brief, and it says that neither mistake of age nor consent is a defense to a prosecution under the target offense, prosecuted alone or in conjunction with charges under the attempt statute. So D.C. law conclusively answers Your Honor's question. Thank you. Now, even if the Court does not agree with our first argument, the attempt argument, the Board has repeatedly held that a defense can only qualify as a crime of child abuse if it requires a mens rea of at least negligence. And it has issued multiple published decisions in which it found an offense qualified as a crime of child abuse only after assuring itself that it was not a strict liability crime. The most recent and irrelevant of these decisions was the matter of Aguilar-Barajas, in which the Board held that statutory rape in Tennessee is a crime of child abuse only after finding that it is not a strict liability crime. The Board cited the decision of the Tennessee Criminal Court of Appeals in Crawford along, if you look at Crawford, along with the case that Crawford relied on called State v. Ballinger, the courts held in that case that strict liability, sorry, that statutory rape in Tennessee is not a strict liability crime precisely because defendants can raise a mistake of age defense and must act with at least reckless disregard vis-a-vis the age of the victim. And that is why the concurring opinion in Aguilar-Barajas specifically said, without any contradiction from the majority, that while statutory rape is often a strict liability offense, Tennessee was an exception to the general rule. So the governments, we think the governments are reading a matter of Aguilar-Barajas is just simply contrived. Well, yes. Let me, you know the facts and everything in that case probably better than me. And certainly I think it is right to say that test, in that case the fact that the statute was not strict liability was part of the reasoning. It seems like there is a different, it is one step further to say that if you have a statute that requires an intent, a sufficient intent to other aspects of the offense, that a strict liability element to the knowledge of the child is somehow, means you don't have a, that voids that type of a statute. So I mean it seems, I think you are accurately citing something that the board found important in Tennessee. It is another step to say that a statute like we have here wouldn't qualify, because the statute like we have here has an intent element, it is just not throughout. Sure, but the intent element in the D.C. statute doesn't relate to the fact that the victim is a child. That is what I think is required. And the only reason, and also in the Tennessee statute, I mean I don't think it is physically possible to commit intercourse involuntarily. So I think that is why statutory rape statutes generally don't have a levitious intent requirement, because that is the nature of the underlying act. In the statute like the D.C. statute here, legislatures insert that intent requirement to distinguish sexual touching from garden variety assault or even involuntary touching such as may occur if you are on a subway and the train comes to a sudden stop and you accidentally put your hands on someone in front of you. That is why the intent element is in the D.C. statute to distinguish it from those garden variety offenses. Thank you.
judges: J. Harvie Wilkinson III, Julius N. Richardson, A. Marvin Quattlebaum Jr.